IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PORTIA D. JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV1251 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Portia D. Jenkins, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Act. (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 12). For the reasons that follow, the Court should enter judgment for Defendant.

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on August 13, 2009, alleging a disability onset date of January 1, 2006. (Tr. 117-20.) Upon denial of the application initially and upon reconsideration (Tr. 65, 66, 67-70, 74-78), Plaintiff requested and received a hearing de novo before an Administrative Law Judge ("ALJ"), at which Plaintiff, her representative, and a vocational expert ("VE")

appeared. (Tr. 36-64.) The ALJ then ruled Plaintiff not disabled under the Act. (Tr. 15-32.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-6), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering this disability determination, the ALJ made the following findings later adopted by Defendant:

> 1. [Plaintiff] has not engaged in substantial gainful activity since August 13, 2009, the application date.
>
>     . . . .
>
> 2. [Plaintiff] has the following severe impairments: degenerative joint disease of her bilateral knees, degenerative disc disease, obesity, asthma, an anxiety-related disorder, major depressive disorder, and borderline intellectual functioning.
>
>     . . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
>     . . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except that she can only occasionally climb, balance, and crouch; can frequently stoop, kneel, and crawl; cannot climb ladders; and must avoid concentrated exposure to irritants, including fumes, dust and gases. With regard to her mental residual functional capacity, . . . [Plaintiff] can perform simple routine tasks with simple, short instructions; can make simple work-related decisions; can tolerate few workplace changes; can occasionally interact with the public, coworkers, and supervisors; and cannot perform work requiring her to write reports.
>
>     . . . .
>
> 5. [Plaintiff] is capable of performing past relevant work as a foam fabricator. This work does not require

the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

.  .  .  .

6. [Plaintiff] has not been under a disability, as defined in the . . . [Act], since August 13, 2009, the date the application was filed.

(Tr. 20-32.)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of our review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [resulting in denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation

marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id.

(quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[1] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[3]

---

[3] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail
(continued...)

## B. Assignment of Error - Listing 12.05C

Plaintiff contends that the ALJ erred at step three of the SEP because he should have concluded that Plaintiff met the mental retardation listing codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) ("Listing 12.05C"). (Docket Entry 11 at 3-8.)[4] According to Plaintiff, the ALJ improperly "discounted [Plaintiff's] performance IQ score of 67 and verbal IQ score of 70 by asserting that various activities engaged [in] by Plaintiff indicate functioning above the level of mental retardation." (Id. at 4 (citing Tr. 30).) In addition, Plaintiff maintains that the ALJ erred by relying on Plaintiff's academic record in secondary school, past work experience, family history, and daily activities to find that she did not possess the requisite deficits in adaptive functioning prior to age 22. Instead, Plaintiff asserts that the ALJ should have focused on the report of consultative examiner Gregory A. Villarosa, Ph.D., who assessed Plaintiff's full scale IQ at 70 and opined that those results did "not appear to suggest any appreciable change from prior functional abilities" (Tr. 231), and

---

[3](...continued)
at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[4] Effective September 3, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in its Listing of Impairments. See Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013). Because this case commenced prior to the change and the ALJ utilized the old terminology, this Recommendation will use the term "mental retardation."

Plaintiff's elementary school records which reflect IQ scores of 58 and 70 (Tr. 193). (Id. at 7.) Finally, Plaintiff asserts that the ALJ failed entirely to address the third prong of Listing 12.05C, i.e., whether another impairment imposes an additional and significant limitation of function. (Id. at 8 (citing Tr. 22-23).) Plaintiff's argument provides no basis for relief.

The mental retardation listing provides in relevant part:

> 12.05 *Mental retardation*: Mental retardation refers to <u>significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period</u>; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. <u>A valid verbal, performance, or full scale IQ of 60 through 70</u> and <u>a physical or other mental impairment imposing an additional and significant work-related limitation of function</u> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).

Accordingly, a claimant can meet Listing 12.05C by establishing:

1) "a showing of deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 (Prong 1)," <u>Hancock v. Astrue</u>, 667 F.3d 470, 473 (4th Cir. 2012) (internal quotation marks omitted);

2) "a valid verbal, performance, or full scale IQ of 60 through 70 (Prong 2)," <u>id.</u> (internal quotation marks omitted); and

-8-

3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function (Prong 3)," id. (internal quotation marks omitted).

Plaintiff's arguments regarding the ALJ's findings with respect to Prong 2 (IQ scores) and Prong 3 (additional impairment(s)) lack merit. Contrary to Plaintiff's assertions, the ALJ did not discount Plaintiff's IQ scores from Dr. Villarosa's consultative examination in analyzing Listing 12.05C[5] and did make an express finding that Plaintiff had additional severe impairments. Specifically, the ALJ found that, "[a]lthough [Plaintiff] has additional severe impairments and although intelligence testing has revealed IQ scores of 60 through 70, the 'paragraph C' criteria of [L]isting 12.05 are not met because the evidence of record does not support a finding that [Plaintiff] has the requisite adaptive deficits." (Tr. 22.)

The question in this case thus becomes whether the ALJ's determination adverse to Plaintiff on the "adaptive functioning" component of Prong 1 of Listing 12.05C can rest on these factual predicates:

1) Plaintiff "earned Cs or better in eighth and ninth grades" (Tr. 22);

2) Plaintiff "worked in several jobs in the textile industry" (id.);

---

[5] Notably, the passage cited by Plaintiff in support of her argument in this regard (Docket Entry 11 at 4 (citing Tr. 30)), forms part of the ALJ's discussion of Plaintiff's RFC and not the analysis of whether Plaintiff's borderline intellectual functioning meets or equals Listing 12.05C.

3) Plaintiff "worked at the substantial gainful activity level performing foam-cutting tasks in a foam fabrication plant" (id.);

4) Plaintiff "was married twice and was able to raise two children" (Tr. 23); and

5) Plaintiff "can take care of personal finances" and "was able to care for her elderly parents and currently babysits her grandchildren" (id.; see also id. (noting that Plaintiff could handle her own grooming and personal needs, that Plaintiff's care of her parents included cooking, shopping, cleaning, administering medication, and bathing, that care of her grandchildren included preparing meals, reading to them, and helping with homework, and that Plaintiff lived alone in an apartment and talked to others on the telephone four to five times per day)).

The Court should conclude that the foregoing factual findings provide a sufficient basis to sustain Defendant's decision that Plaintiff failed to carry her burden under Prong 1 of showing "deficits in adaptive functioning," Hancock, 667 F.3d at 473, for at least two reasons.

First, although Prong 1 of Listing 12.05C "does not expressly define 'deficits in adaptive functioning' . . . '[a]daptive activities' are described elsewhere in the [Mental Disorders] Listing . . . as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'" Blancas v. Astrue, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404,

Subpt. P, App. 1, §§ 12.05 and 12.00(C)(1)) (emphasis added); accord Hager v. Astrue, No. 2:09CV1357, 2011 WL 1299509, at *2 (S.D.W. Va. Mar. 31, 2011) (unpublished).[6] The record (as cited by the ALJ (see Tr. 22-23)) contains substantial evidence that Plaintiff can perform virtually all of these adaptive functions.

Second, the ALJ's findings regarding Plaintiff's demonstrated capacity to carry out relevant activities compares favorably to the level of functionality deemed sufficient to overcome the claimant's appeal in Hancock, 667 F.3d at 475-76 & n.3.  In other words, in Hancock, the Fourth Circuit upheld an ALJ's finding that the claimant failed to carry the burden of showing deficits in adaptive functioning under Prong 1 of Listing 12.05C and, in this case, the record contains evidence that Plaintiff performs relevant activities at least as well as did the claimant in Hancock, who had the following characteristics:

1) "the ability to shop, pay bills, and make change," id. at 476

2) "takes care of three small grandchildren at a level of care that satisfies the Department of Social Services," id.;

3) "does the majority of her household's chores, including cooking and baking," id.;

4) "is attending school to obtain a GED," id.; and

---

[6] Similarly, a highly regarded treatise defines "adaptive functioning" as an individual's skills with respect to "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, and safety." Diagnostic & Statistical Manual of Mental Disorders 41 (4th ed. text rev. 2007).

5) "does puzzles for entertainment," id.[7]

Under these circumstances, the Court should reject Plaintiff's arguments regarding Listing 12.05C.

### III. CONCLUSION

The record does not reveal a basis sufficient to grant Plaintiff's request for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Defendant's motion for judgment on the pleadings (Docket Entry 12) be granted, Plaintiff's motion for judgment on the pleadings (Docket Entry 10) be denied, and this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 2, 2015

---

[7] Although the Fourth Circuit found these characteristics <u>sufficient</u> to support a finding of an absence of deficits in adaptive functioning, it did not intimate that those (or comparable) capabilities constituted the <u>minimum</u> that would suffice to support such a finding. See Hancock, F.3d at *5 & n.3. Hancock thus provides a valuable comparison standard for assessing an ALJ's findings regarding Prong 1's adaptive functioning requirement, but does not identify an outer boundary in this context.